UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                    Chapter 11

NRAD MEDICAL ASSOCIATES, P.C.,                            Case No. 8-15-72898-las

Debtor.

-------------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER GRANTING
### MOTION TO REOPEN DEBTOR'S CHAPTER 11 CASE

Before the Court is the second motion (the "Motion") [Dkt. No. 677][1] of Alice Kim, M.D.; David Kaplan, M.D.; Corrine Tobin, M.D.; Elizabeth Lustrin, M.D.; Jay Bosworth, M.D.; Jed Pollack, M.D.; Colette Zito, as executor of the estate of Joseph Zito, M.D.; and Julian Safir, M.D. (collectively, the "Movant Former Shareholders")[2], former shareholders and creditors of the bankruptcy estate of the debtor, NRAD Medical Associates, P.C. ("NRAD" or the "Debtor"), to reopen the bankruptcy case of the Debtor pursuant to 11 U.S.C. § 350(b).[3] Specifically, the Movant Former Shareholders seek to reopen the bankruptcy case so as to move the Court for derivative standing[4] to bring suit on behalf of NRAD's bankruptcy estate against NRAD's current shareholders, Robert V. Blake, M.D.; Paul D. Cayea, M.D.; Paul S.

---

[1] Unless otherwise stated, court filings cited herein refer to the Chapter 11 bankruptcy case, *In re NRAD Medical Assocs., P.C.*, Case No. 8-15-72898-las, and citations to docket entries are cited as "[Dkt. No. ____]".

[2] Alice Kim, M.D. and David Kaplan, M.D., who were among the Movant Former Shareholders, are no longer being represented in this matter.  On May 21, 2026, the Court entered the Order granting the application of Meyer, Suozzi, English & Klein, P.C., counsel for the Movant Former Shareholders, to withdraw as counsel of record for Alice Kim, M.D. and David Kaplan, M.D. [Dkt. No. 695]; *see also* Mot. to Withdraw [Dkt. No. 690].

[3] Hereinafter, title 11 of the United States Code is defined as the "Bankruptcy Code"; the Federal Rules of Bankruptcy Procedure are defined as the "Bankruptcy Rules"; and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York are defined as the "Local Rules."

[4] In this Memorandum Decision and Order, the Court addresses the threshold issue of whether to reopen the Debtor's bankruptcy case and declines to rule on the proposed motion by the Movant Former Shareholders, requesting derivative standing to sue the Current Shareholders on behalf of the Debtor, or any issues related to whether the Movant Former Shareholders have waived their claims to the MLMIC Proceeds.

1

Lang, M.D.; Robin Ehrenpreis, M.D.; Daniel Benjamin, M.D.; Gene Berkovich, M.D.; Eric Schnipper, M.D.; and Paul Schorr, M.D. (collectively, the "Current Shareholders") for disgorgement of certain proceeds distributed to the Current Shareholders by NRAD in connection with the demutualization of the Medical Liability Mutual Insurance Company (the "MLMIC Proceeds").

In the Motion, the Movant Former Shareholders argue that, in light of the Court's holding that the MLMIC Proceeds are property of the bankruptcy estate, "other cause" exists pursuant to Bankruptcy Code Section 350(b) to reopen the Debtor's case to enforce the Court's order (the "Confirmation Order") [Dkt. No. 564], confirming the Debtor's Second Amended Chapter 11 Plan (the "Plan") [Dkt. No. 496].  *See* Mem. of Law in Support of Mot. to Reopen at 5 [Dkt. No. 677].  In addition, the Movant Former Shareholders argue that reopening the Debtor's case is necessary to allow them to bring certain causes of action against the Current Shareholders to return the MLMIC Proceeds to the Debtor's estate. *Id.* On the other hand, the Debtor argues that its bankruptcy case should not be reopened because (1) the doctrine of equitable mootness applies; (2) the Movant Former Shareholders waived their claims to the MLMIC Proceeds because (i) they waived their claims pursuant to the NYU Transaction[5], (ii) they waived their claims by failing to pursue relief after the Court's Summary Judgment Decision (defined below), and (iii) they are not eligible to receive the MLMIC Proceeds because they ceased being shareholders of NRAD before the Debtor's petition date and the MLMIC Proceeds are surplus proceeds; and (3) the claims of the Movant Former

---

[5] By the end of 2017, NRAD owned Blue Dot Holdings, LLC, a holding company, which had a 52.8875% interest in Meridian Imaging Group, LLC ("Meridian").  *See* JSF ¶ 47.  On or about July 25, 2018, NRAD transferred its ownership interest in Meridian to New York University School of Medicine ("NYU"), and NRAD received its portion of the proceeds.  *See id.* ¶ 67.  "In or about July 2018, the Former Shareholders each executed and delivered a Declaration and Release agreeing to receive payment reflecting the 13.33% discount of their Maximum Distribution, and releasing any and all claims against NYU."  *Id.* ¶66.

2

Shareholders are futile because they cannot plead or establish fraud. *See* Debtor's Mem. of Law in Opp. at 11-25 [Dkt. No. 680].  In reply, the Movant Former Shareholders argue, *inter alia*, that (1) the Debtor's plan has not been substantially consummated because a significant sum of money now deemed by the Court to be property of the estate remains undistributed in accordance with the Plan; (2) the Movant Former Shareholders have not waived their claims; (3) the MLMIC Proceeds are not surplus proceeds but rather property of the estate, and the Movant Former Shareholders are proceeding in their capacity as creditors of the Debtor; and (4) the claims of the Movant Former Shareholders in a potential second adversary proceeding are not futile but rather colorable.  *See* Reply Mem. of Law in Further Support to Reopen at 2-5 [Dkt. No. 684].

The Court has carefully reviewed the parties' submissions and heard oral argument on the Motion. For the reasons set forth below, the Court grants the Motion to reopen the Debtor's bankruptcy case.[6]

### **JURISDICTION**

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

### **BACKGROUND**

This section incorporates by reference the facts set forth in the Court's prior memorandum decision and order dated January 26, 2024 (the "Summary Judgment

---

[6] This Memorandum Decision and Order is consistent with the Court's ruling on the Motion as set forth on the record of the hearing held on May 19, 2026.

Decision") [Adv. Dkt. No. 61][7], which was issued in the adversary proceeding *Kim, et al. v. NRAD Medical Assocs. P.C.* within the Debtor's Chapter 11 case. The facts set forth in the Summary Judgement Decision were drawn from the Joint Statement of Undisputed Facts ("JSF") [Adv. Dkt. No. 47] filed by the parties pursuant to Bankruptcy Rule 7056 and Local Rule 7056-1.  In the Summary Judgment Decision, the Court granted plaintiffs'[8] motion and denied defendant's motion as to plaintiffs' first claim for relief, holding that the MLMIC Proceeds were property of the Debtor's bankruptcy estate. *See* Summ. J. Dec. at 18 [Adv. Dkt. No. 61].  The Court also denied defendant's motion as to plaintiffs' second, third, fourth, and fifth claims for relief, concluding that triable issues of fact exist and that defendant had not demonstrated that no rational jury could find in favor of plaintiffs. *See* Summ. J. Dec. at 28 [Adv. Dkt. No. 61].  On February 9, 2024, the defendant filed a notice of appeal and a motion for leave to appeal the Summary Judgment Decision [Adv. Dkt. Nos. 63-64] to the United States District Court for the Eastern District of New York (the "District Court").  On March 28, 2024, the District Court entered an order denying the Debtor's motion for leave to appeal and remanded the matter to the bankruptcy court [Adv. Dkt. No. 71].[9]

On April 11, 2024, the Court held a pretrial conference, at which plaintiffs requested entry of a judgment in accordance with the Summary Judgment Decision, which in their minds obviated the need for a trial on the remaining counts in their complaint. *See* April 11

---

[7] Court filings in the adversary proceeding cited herein refer to those made in the adversary proceeding *Kim, et al. v. NRAD Medical Assocs. P.C.*, Case No. 8-20-08157-las, and citations to docket entries are cited as "[Adv. Dkt. No. ____]".  Capitalized terms used but not defined in this Memorandum Decision and Order shall have the meanings assigned to such terms in the Summary Judgment Decision or the Joint Statement of Undisputed Facts.

[8] The plaintiffs in the adversary proceeding *Kim, et al. v. NRAD Medical Assocs. P.C.* were the Movant Former Shareholders, and the defendant was NRAD.

[9] On April 8, 2024, NRAD filed a motion requesting certification of an appeal and a notice of appeal to the United States Court of Appeals for the Second Circuit (the "Second Circuit"). *See NRAD Medical Assocs. P.C. et al. v. Kim et al.,* No. 24-01032-GRB, at Dkt. Nos. 6-7. The District Court denied the motion requesting certification of an appeal to the Second Circuit, and the parties filed a stipulation agreeing to a withdrawal of the appeal, which was "So Ordered" by the Second Circuit on August 19, 2024.  *See* [Adv. Dkt. No. 84].

4

2024 Hr'g Tr. 13:8-15, 15:7-16:13 [Adv. Dkt. No. 78].  Thereafter, plaintiffs filed a motion on May 30, 2024, seeking entry of a proposed judgment on the first claim for relief, which included directing the Current Shareholders to return the MLMIC Proceeds to the Debtor and holding them jointly and severally liable in a money judgment in the amount of the MLMIC Proceeds with interest. *See* Proposed J. ¶ 2-3 [Adv. Dkt. No. 79].  Defendant filed opposition to the entry of plaintiffs' proposed judgment on July 31, 2024 [Adv. Dkt. No. 82], and plaintiffs filed a reply to defendant's opposition on August 14, 2024 [Adv. Dkt. No. 83]. The Court held a hearing on plaintiffs' motion for entry of judgment on August 22, 2024, and defendant submitted a counter proposed judgment on September 5, 2024.  *See* Order Entering J. on Claim 1 [Adv. Dkt. No. 85]. On September 6, 2024, the Court entered a judgment in plaintiffs' favor on their first claim for relief, adjudging solely that the MLMIC Proceeds constitute property of the Debtor's bankruptcy estate based upon the Summary Judgement Decision. *See id.*  The adversary proceeding *Kim, et al. v. NRAD Medical Assocs. P.C.* was closed on December 18, 2024.  On April 23, 2025, the Movant Former Shareholders filed the second motion to reopen the Debtor's bankruptcy case. [Dkt. No. 677].  The Debtor filed opposition to the Motion on July 18, 2025 [Dkt. Nos. 679-80], and the Movant Former Shareholders filed a Reply Memorandum of Law in Further Support of the Motion on August 1, 2025 [Dkt. No. 684].  Subsequently, the Court heard oral argument on the Motion.

## DISCUSSION

I.    Legal Standard

Pursuant to Bankruptcy Code Section 350(b), a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  Bankruptcy Rule 5010 provides that "[o]n the debtor's or another

5

party in interest's motion, the court may, under § 350(b), reopen a case." Fed. R. Bankr. P. 5010.

"Ultimately, the decision to reopen a case is at the broad discretion of the bankruptcy court." *In re Mancone*, No. 18-36018 (KYP), 2026 WL 467326, at *3 (Bankr. S.D.N.Y. Feb. 18, 2026) (quoting *In re HBLS, L.P.*, 468 B.R. 634, 638 (Bankr. S.D.N.Y. 2012)). "However, it is an abuse of discretion to deny reopening where there appears to be property of the estate of such 'probability, administrability and substance . . . as to make it unreasonable under all the circumstances for the court not to deal with [such property].'" *In re Maeder*, No. 8-12-73429-ast, 2025 WL 3298322, at *3 (Bankr. E.D.N.Y. Nov. 26, 2025) (quoting *In re Arana*, 456 B.R. 161, 173 (Bankr. E.D.N.Y. 2011)); *see also In re Dicks*, 579 B.R. 704, 707-08 (Bankr. E.D.N.Y. 2017) (citation omitted) ("[C]ourts have held that the court 'has a duty to reopen the case whenever there is proof that [it] has not been fully administered.'"); *In re Riazuddin*, 363 B.R. 177, 183-84 (B.A.P. 10th Cir. 2007) (citing *In re Mullendore*, 741 F.2d 306, 308 (10th Cir. 1984)) ("[A]lthough the bankruptcy court has discretion in many instances whether to reopen a bankruptcy case, it is the *duty* of the court to reopen a case whenever prima facie proof is made that the estate has not been fully administered."); 3 COLLIER ON BANKRUPTCY ¶ 350.03[1] (16th ed. 2026) ("Under section 350(b) and Rule 5010, the discovery of unadministered assets, which was once the sole basis for reopening a case, continues to be a sufficient reason for the court to exercise its power.").

However, courts have held that a case should not be reopened if the relief sought from reopening would be futile, reopening would result in a waste of judicial resources, or where creditors are unlikely to reap any benefit from the addition of an unadministered asset. *See Gamez v. Lopez (In re Lopez)*, No. 23-326, 2023 WL 7485464, at *1 (2d Cir. Nov. 13, 2023) (finding that the bankruptcy court did not abuse its discretion when determining that

6

reopening the case "would not result in the administration of any asset for the benefit of the creditors of the estate"); *In re Mohammed*, 536 B.R. 351, 355 (Bankr. E.D.N.Y. 2015) (citation omitted) (limiting the exercise of its discretion to reopen a case where relief may ultimately not be granted and where reopening is futile or a waste of judicial resources); *Arana*, 456 B.R. at 173 ("But if creditors are not likely to benefit from the addition of an asset, the balance tips in the other direction, and relief may not be warranted.").

Regarding "other cause" in Bankruptcy Code Section 350(b), the term "cause" is not defined in the Bankruptcy Code, and "reopening a bankruptcy case under section 350(b) of the Bankruptcy Code 'invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent on the facts and circumstances of the case.'" *In re Jones*, No. 14-10143 (MG), 2025 WL 432843, at \*2 (Bankr. S.D.N.Y. Feb. 6, 2025) (citation omitted) (quoting *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 104 F. App'x 199, 200 (2d Cir. 2004)). "The burden is on the movant to demonstrate 'cause' to reopen the bankruptcy case." *Id.* (quoting *In re Kim*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017)). Courts in the Second Circuit have utilized certain factors (the "*Easley* Factors"), when exercising their discretion to determine whether cause exists to reopen a bankruptcy case:

> (1) the length of time that the case was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case; (3) whether in prior litigation the bankruptcy court determined that a state court would be the appropriate forum; (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit to the debtor by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming by granting the motion to reopen.

*Id.* (quoting *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013)). "When weighing these factors, a court should emphasize substance over technical considerations." *Id.* (citing *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at \*4 (Bankr. S.D.N.Y. Apr. 20, 2016)). In addition, courts have considered the benefit to creditors of the estate. *See Arana*,

7

456 B.R. at 172 (considering "the benefit to creditors, the benefit to the debtor, the prejudice to the affected party, and other equitable factors"). The Second Circuit has held that bankruptcy courts must "explain what prejudice, if any, would result from reopening a case." *Harbour Trust Co. v. Aaron (In re Plusfunds Group, Inc.)*, 589 F. App'x 41, 43 (2d Cir. 2015).

II.    Analysis

A. Prima Facie Evidence of an Unadministered Asset of the Debtor's Bankruptcy Estate

The Court has ruled that the MLMIC Proceeds are property of the Debtor's bankruptcy estate. *See* Summ. J. Dec. at 18 [Adv. Dkt. No. 61]. "During NRAD's Bankruptcy Proceeding, NRAD did not reference MLMIC or the MLMIC Policies," nor did NRAD's Bankruptcy Plan reference MLMIC or the MLMIC Policies. JSF ¶¶ 34-35. In addition, the Current Shareholders testified that they did not become aware of the MLMIC Demutualization until August 2018, approximately 5 months after the Debtor's Chapter 11 case was first closed on March 2018. *See id.* ¶¶ 38, 87. Thus, according to the Current Shareholders' own testimony, these MLMIC Proceeds were not known to the parties at the time the Debtor's bankruptcy case was first closed. Furthermore, the MLMIC Proceeds exceed $3.2 million and were distributed by NRAD to only the Current Shareholders in March 2020 (after arbitration and litigation concerning whether the MLMIC Proceeds should be distributed to NRAD as the policy administrator or to individual policyholders) rather than pursuant to the distribution scheme of the Debtor's Plan, notwithstanding the issue of any releases and waiver of the MLMIC proceeds. *See id.* ¶¶ 103-11. As a result, there appears to be prima facie evidence of the existence of unadministered estate assets of such "probability, administrability and substance" that it would be unreasonable for the Court not to reopen the Debtor's Chapter 11 case. *See In re Stanley*, No. 2:17-bk-15178-ER, 2022 WL

8

256769, at *4 (Bankr. C.D. Cal. Jan. 27, 2022) (quoting *Lopez v. Specialty Rests. Corp. (In re Lopez)*, 283 B.R. 22, 27 (B.A.P. 9th Cir. 2002) (reopening the debtor's bankruptcy case and "only consider[ing] . . . whether 'assets of such probability, administrability, and substance appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them'").

It must be noted that in making this decision, the Court is not ruling on the proposed motion for derivative standing by the Movant Former Shareholders, nor is the Court making any determinations with respect to any causes of action that the Movant Former Shareholders (on behalf of the Debtor) intend to bring against the Current Shareholders or any defenses the Current Shareholders may raise in such causes of action. The Court, in its discretion, is granting the Motion based upon, *inter alia*, its decision that the MLMIC Proceeds are property of the estate and because there is prima facie evidence of unadministered assets of the estate.

B. Reopening of Debtor's Case Not Futile or a Waste of Judicial Resources.

Courts have held that reopening a debtor's bankruptcy case is not warranted if such reopening would be futile, would result in a waste of judicial resources, or where creditors are unlikely to reap any benefit from the addition of an unadministered asset. *See Lopez,* 2023 WL 7485464, at *1; *Mohammed*, 536 B.R. at 355. The Debtor argues, *inter alia*, that the Movant Former Shareholders waived their claims to the MLMIC Proceeds and it would be futile to reopen the Debtor's bankruptcy case. *See* Debtor's Mem. of Law in Opp. at 17-25 [Dkt. No. 680]. The Movant Former Shareholders contest these assertions. *See* Reply Mem. of Law in Further Support to Reopen at 3-5 [Dkt. No. 684]. However, whether the Movant Former Shareholders waived their claims to the MLMIC Proceeds is a matter of dispute with colorable arguments on both sides. The fact that a finding of waiver is possible or that further

9

litigation is necessary does not mean that reopening is futile—that is, the vagaries of litigation do not equate to futility.  In addition, the Court finds that there is at least some reasonable possibility that reopening the Debtor's bankruptcy case may result in substantial relief to the creditors of the estate, a re-distribution of over $3.2 million in proceeds.[10] For the same reasons, the Court finds that reopening the Debtor's bankruptcy case is not a waste of judicial resources and that the circumstances of this case demonstrate at least some likelihood of newly discovered estate assets being administered to creditors, notwithstanding the vagaries of litigation. *See Paul v. Yakubova (In re Yakubova)*, No. 24-10600 (PB), Adv. Pro. No. 25-01137 (PB), 2026 WL 1246576, at \*12 (Bankr. S.D.N.Y. May 6, 2026) (citation omitted) (reopening debtor's case because plaintiffs "have shown that a reopening of the case could potentially benefit creditors," and the debtor "has not come close to showing that the plaintiffs' claims are 'entirely without merit'").

C.  The Doctrine of Equitable Mootness Inapplicable to the Facts and Circumstances of this Case.

The Debtor argues that its bankruptcy case should not be reopened because the doctrine of equitable mootness applies.  "Equitable mootness is a prudential doctrine under which a court may dismiss a bankruptcy appeal 'when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *GLM DFW, Inc. v. Windstream Holdings, Inc. (In re Windstream Holdings, Inc.)*, 838 F. App'x 634, 636 (2d Cir. 2021) (citations omitted).  "The doctrine is deployed in a 'pragmatic' and flexible fashion, and must be responsive to the 'specific factors presented in a particular case.'" *Id.* (citing *Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*, 772 F.3d 102, 107–08 (2d

---

[10] This amount may be reduced by the pro rata share of the MLMIC Proceeds that the Current Shareholders may be entitled to keep. Per Schedule 1 annexed to the Debtor's Plan, the Current Shareholders' pro rata share of distributions to Class 6 Claims is 31.8182%. *See* [Dkt. No. 496].

10

Cir. 2014)).  Where a plan has been substantially consummated, there is a presumption that an appeal is equitably moot.  *See id.* (citations omitted).  A party in the Second Circuit seeking to rebut such a presumption must demonstrate the satisfaction of five factors (the "*Chateaugay* Factors"):

> (1) the court can still order some effective relief;
> (2) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
> (3) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the [b]ankruptcy [c]ourt;
> (4) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
> (5) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* (quotation marks omitted) (quoting *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952-53 (2d Cir. 1993)).  "The Second Circuit has placed 'special emphasis' on the fifth factor in considering equitable mootness."  *In re Celsius Network LLC*, No. 23 Civ. 10368 (LGS), 2024 WL 3376496, at \*3 (S.D.N.Y. July 11, 2024) (citing *Matter of MPM Silicones, L.L.C.*, 874 F.3d 787, 805 (2d Cir. 2017)).

While it is true that the doctrine of equitable mootness is not limited to appeals of plan confirmation orders and has been applied in a "range of contexts, including appeals involving all manner of bankruptcy court orders," *In re 307 Assets LLC*, 665 B.R. 214, 220 (S.D.N.Y. 2024) (quotation marks and citations omitted), the Court finds that this doctrine is inapplicable to the circumstances of this case.  In particular, the Court finds that the fifth *Chateaugay* Factor is inapplicable because the Movant Former Shareholders did not know of the existence of the MLMIC proceeds until after the Debtor's bankruptcy case was closed.  Courts have held that in order to reopen a case under Bankruptcy Code Section 350(b) and Bankruptcy Rule 5010 to administer assets, such assets must not have been known at the

time the case was closed.  *See In re Lusher*, No. 18-71772, 2019 WL 4553432, at *3 (Bankr. C.D. Ill. Sept. 19, 2019) (citation omitted) (denying trustee's motion to reopen the bankruptcy case and holding that an inheritance disclosed on the debtor's schedules was abandoned when the case was closed).  Consequently, if the Movant Former Shareholders did not know of the MLMIC Proceeds at the time the Debtor's bankruptcy case was closed, then they would not have had a reason to seek a stay of any orders in the bankruptcy case based upon such assets, including the Confirmation Order and the final decree closing the case.  If the doctrine of equitable mootness applies in this scenario, then this doctrine may possibly prevent any party in the Second Circuit, who did not seek a stay of a confirmation order, from moving to reopen a bankruptcy case where there are estate assets newly discovered after the close of the bankruptcy case and the plan has been substantially consummated—in other words, a plan will normally be substantially consummated and no stay sought if the reason for an objection is not known at that time. The Court in its discretion declines to apply the doctrine of equitable mootness to its consideration of the Motion, finding that its application would be over-expansive given the circumstances of this case.  *Cf. R² Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.)*, 691 F.3d 476, 485 (2d Cir. 2012) (citing *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 192 (3d Cir. 2001) (Alito, J., concurring)) (noting that "allowing a boilerplate nonseverability clause" to determine the question of equitable mootness would constrain Article III review and "[g]iven the ubiquity of nonseverability clauses in prenegotiated plans, such a rule could moot virtually every appeal where a stay had not been granted").

D.   "Other Cause" Exists to Reopen the Debtor's Bankruptcy Case.

The Court finds that "other cause" exists under the *Easely* Factors and other equitable concerns to reopen the Debtor's case.

12

1.  The Length of Time the Case was Closed.

Courts have recognized that as the time between the close of a bankruptcy case and its reopening increases, "so must the cause for reopening increase in weight"; however, "nothing in the Bankruptcy Code or [the Bankruptcy Rules] proscribes the time within which a motion to reopen a closed case must be made." *In re Navillus Tile, Inc.*, 634 B.R. 847, 859 (Bankr. S.D.N.Y. 2021) (quotation marks omitted) (citing *Atari*, 2016 WL 1618346, at *5); *see also In re Texaco, Inc.*, 668 B.R. 1, 7 (Bankr. S.D.N.Y. 2025) (reopening debtor's 37-year-old closed bankruptcy case because of the "paramount bankruptcy-court and systemic interest in having bankruptcy courts determine the meaning and impact" of their own orders, particularly with regard to a plan's discharge and injunction provisions).  "While there is no time limitation imposed by § 350 or Bankruptcy Rule 5010, the doctrine of laches may be a basis to deny a motion to reopen." *In re Stein*, 394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008) (citations omitted). "Generally, laches is applied where it is clear that a plaintiff unreasonably delayed in initiating an action and a defendant was prejudiced by the delay." *Id.* (quoting *Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir. 1992)).  However, the length of time a case was closed is "not a meaningful factor" during time periods when the moving party does "not have any reason to seek reopening." *Navillus Tile*, 634 B.R. at 859 (quotation marks omitted) (citing *Atari*, 2016 WL 1618346, at *5).

In *Navillus Tile*, the debtor moved to reopen its bankruptcy case to invoke a plan's discharge and injunction provision to bar litigation initiated by the New York City Housing Authority ("NYCHA"). *Id.* at 850. The *Navillus Tile* court found, that similar to the circumstances in *Atari*, the debtor "did not have any reason to seek to reopen this case until NYCHA commenced its action in state court," which was nine months before the debtor filed the motion to reopen. *Id.* at 859 (citing *Atari*, 2016 WL 1618346, at *5). The *Navillus Tile*

13

court found that no caselaw had been presented to show that nine months was a "meaningful delay"; rather, the contrary was true. *Id.* (citing *Arana*, 456 B.R. at 175-76; *Stein*, 394 B.R. at 16-18) (referencing cases where courts reopened bankruptcy cases—one almost five years after closing and another more than eight years after closing because the debtor "did not realize he owned an interest in [real] property until approximately ten months before he filed the motion"). Even if the moving party does delay, the opposing party must show some prejudice from the delay, and the "mere lapse of time [between the closing of a case and its reopening] does not constitute prejudice." *Id.* (citing *Atari*, 2016 WL 1618346, at *6).

Here, NRAD's bankruptcy case was first closed on March 15, 2018. *See* JSF ¶ 38. The Current Shareholders testified that they did not become aware of the MLMIC Demutualization until August 2018. *See id.* ¶ 87. After NRAD informed eligible policyholders (including certain of the Movant Former Shareholders) of its intention to claim the MLMIC Proceeds, several months of litigation and arbitration ensued. *See id.* ¶¶ 95, 104. On October 4, 2019, Arbitrator Erica Garay awarded the MLMIC Proceeds to NRAD, and on October 28, 2019, Justice Timothy Driscoll of the Supreme Court of the State of New York, County of Nassau, also awarded the MLMIC Proceeds to NRAD. *See id.* ¶¶ 105-06. In March 2020, after MLMIC considered those decisions final and non-appealable, the MLMIC proceeds were distributed to NRAD, which then distributed the proceeds to the Current Shareholders. *See id.* ¶¶ 109-10.

On May 8, 2020, the Movant Former Shareholders filed their first motion to reopen the Debtor's bankruptcy case [Dkt No. 655], which was approximately 2 years and 2 months after the case was first closed on March 15, 2018 but approximately 2 months after the MLMIC Proceeds were distributed to the Current Shareholders in March 2020. *See id.* ¶¶

14

110, 117. The Court granted the first motion to reopen the Debtor's case by order dated September 17, 2020. [Dkt. No. 665].

On September 24, 2020, the Movant Former Shareholders commenced an adversary proceeding, seeking, *inter alia*, a judgment "determining that the MLMIC Proceeds are property of NRAD's bankruptcy estate" and "directing NRAD to distribute the MLMIC Proceeds to creditors whose claims have not been paid in full, in accordance with the Plan . . . ." *See* Compl. ¶ 121 [Adv. Dkt. No. 1]. On August 12, 2021, the Debtor moved to close the bankruptcy case a second time on the grounds that (i) the Debtor's bankruptcy was fully administered and reopened solely for the purpose of allowing the adversary proceeding to commence, (ii) there was no other activity in the bankruptcy case, and (iii) closing the case was in the best interest of the estate and creditors due to continuing United States Trustee fees and other administrative costs. *See* Mot. to Close Reopened Case ¶ 1-2 [Dkt. No. 669]. The Movant Former Shareholders did not oppose this motion "because it was administrative, without prejudice to reopening, and beneficial to the estate." *See* Reply Mem. of Law in Further Support to Reopen at 1-2 (citation omitted) [Dkt. No. 684]. The Court granted the motion to close the Debtor's bankruptcy case a second time on September 3, 2021, "without prejudice to the rights of any party in interest to seek to reopen the Chapter 11 Case," and the case was closed a second time on September 24, 2021. [Dkt. Nos. 674-75].

After several years of litigation, on January 26, 2024, the Court entered the Summary Judgment Decision in the adversary proceeding, holding that the MLMIC Proceeds constitute property of the Debtor's estate. *See* Summ J. Dec. at 18 [Adv. Dkt. No. 61]. On September 6, 2024, the Court entered a judgment in the plaintiffs' favor on their first claim for relief, adjudging solely that the MLMIC Proceeds constitute property of the Debtor's bankruptcy

15

estate.[11]  *See* [Adv. Dkt. No. 85].  The adversary proceeding was closed on December 18, 2024, and the Movant Former Shareholders filed the second motion to reopen the Debtor's bankruptcy case on April 23, 2025 [Dkt. No. 677].

Consequently, the time elapsed between the second close of the Debtor's bankruptcy case on September 24, 2021 and the date when the Movant Former Shareholders filed the second motion to reopen on April 23, 2025 was approximately 3 years and 7 months. However, the Movant Former Shareholders first had reason to file the Motion after the Court entered judgment on their first claim for relief on September 6, 2024 and the adversary proceeding was closed on December 18, 2024.  Thus, the Motion was filed approximately 4 months after the adversary proceeding was closed and approximately 7.5 months after the Court entered judgment on the first claim for relief—this time, with the stated purpose of seeking derivative standing to bring suit against the Current Shareholders for the return of the MLMIC Proceeds to the Debtor's estate. *See* Second Mot. to Reopen Ex. 14 [Dkt. No. 677]. Given that timeframe and the facts of this case, the Court finds that the Movant Former Shareholders did not unreasonably delay in filing the Motion. *See In re Congoleum Corp.*, 149 F.4th 318, 330-31 (3d Cir. 2025) (considering the timeliness of the motion to reopen from the date the moving party received communication that its adversary refused to dismiss a pending suit despite a bankruptcy court order, and finding that a 1 month delay was minor and non-prejudicial)*; Navillus Tile*, 634 B.R. at 859 (finding a 9 month delay to file a motion to reopen a bankruptcy case to bar state court litigation that had commenced was not a "meaningful delay").  Moreover, the Court finds the Debtor was not prejudiced by the approximately 4 to 7.5 month delay because the Debtor was actively involved in the

---

[11] The Court declined to enter a judgment directing the Current Shareholders to return the MLMIC Proceeds to the Debtor or holding them jointly and severally liable in a money judgment for such amounts for a variety of reasons, including jurisdictional issues as well as factual and legal issues surrounding whether the Movant Former Shareholders were entitled to those funds.

proceedings surrounding the motion for entry of judgment—in fact, it was the Debtor who vigorously argued that the judgment on the plaintiffs' first claim for relief should be limited to a declaration that the MLMIC Proceeds are property of the estate without any directives against the Current Shareholders. *See* Aug. 22, 2024 Hr'g Tr. 23:1-7 [Adv. Dkt. No. 87]. For the foregoing reasons, the Court further finds that the Movant Former Shareholders did not inexcusably sleep on their rights, prejudicing the Debtor, such that the doctrine of laches would apply. "Accordingly, the Court concludes that the length of time this case has been closed is 'not a meaningful factor' in its analysis." *Navillus Tile*, 634 B.R. at 859 (citing *Atari*, 2016 WL 1618346, at *6).

2. Whether a Nonbankruptcy Forum Has Jurisdiction to Determine the Issue Which Is the Basis for Reopening the Case.

This factor weighs in favor of reopening the Debtor's bankruptcy case because there is currently no nonbankruptcy forum exercising jurisdiction to determine the issues, which are the basis of reopening the Debtor's bankruptcy case: namely, how certain newly discovered property of the estate is to be re-distributed in accordance with the Plan, including whether re-distribution is appropriate given a claimed waiver of any right to the MLMIC Proceeds by the Movant Former Shareholders. In October 2018, litigation and arbitration commenced by NRAD over the MLMIC Proceeds ended, with the holding that NRAD was entitled to the MLMIC proceeds and not eligible policyholders.[12] *See* JSF ¶¶ 105-06. There were no appeals taken after these decisions. *See id.* ¶ 109. There is no pending litigation in

---

[12] In May 2022, the New York Court of Appeals held that eligible policyholders and not the policy administer who pays the premiums are entitled to the insurance company demutualization proceeds. *See Columbia Memorial Hospital v. Hinds*, 38 N.Y.3d 253, 276-77 (N.Y. 2022) ("In sum, we hold that when an employer pays premiums to a mutual insurance company to obtain a policy of which its employee is the policyholder, and the insurance company demutualizes, absent contrary terms in the contract of employment, insurance policy, or separate agreement, the policyholder is entitled to the proceeds from the demutualization.").

17

any state court concerning the issue of whether NRAD, the Current Shareholders, or the Movant Former Shareholders are entitled to the MLMIC Proceeds.

Furthermore, it is well-settled that a bankruptcy court has "a strong interest in construing the meaning of its own confirmation orders, which are central to the case and to [its] institutional role." *Texaco*, 668 B.R. at 21 (citing *Texaco Inc. v. Sanders (In re Texaco Inc.)*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)); *see also In re Jones*, 2025 WL 432843, at \*3 (citation omitted) (noting bankruptcy courts have jurisdiction and are "undoubtedly the best qualified" to interpret and enforce their own orders). Here, an issue that will likely arise in subsequent litigation following the reopening of the Debtor's case is whether the language of the Plan, Confirmation Order, and other documents in the case supports a release and/or waiver of the claims of the Movant Former Shareholders to the MLMIC Proceeds. *See* Aug. 22, 2024 Hr'g Tr. 30:7-18 [Adv. Dkt. No. 87]. This Court is "undoubtedly the best qualified" to interpret the Plan, its own Confirmation Order and any other orders or documents in the Debtor's bankruptcy case. *See Texaco*, 668 B.R. at 42 (reopening debtor's bankruptcy case for the sole purpose of determining whether the confirmed plan precludes certain plaintiffs from pursuing pending state court actions). Therefore, this factor weighs in favor of reopening the Debtor's bankruptcy case.

3.  Whether in Prior Litigation the Bankruptcy Court Determined that a State Court Would Be the Appropriate Forum.

This factor is inapplicable to this case because the Court has not determined in a prior litigation that a state court would be the appropriate forum for the Movant Former Shareholders to seek return of the MLMIC Proceeds from the Current Shareholders.

18

4.  Whether Any Parties Would Suffer Prejudice Should the Court Grant or Deny the Motion.

In weighing this factor, the Court considers whether NRAD and the Current Shareholders will suffer any prejudice from the opening of Debtor's case and whether creditors, including the Movant Former Shareholders, will suffer any prejudice from the Court denying the Motion.  NRAD, as a corporate entity, will not suffer any legal prejudice from reopening because (1) NRAD is nominal entity, *See* Mot. for Entry of J. ¶ 6 [Adv. Dkt. No. 79], and pursuant to the Plan, "all claims against NRAD's estate have been satisfied, in full, except those of the Former Shareholders and Current Shareholders," JSF ¶ 72, and (2) NRAD stands to benefit by a possible return of more than \$3.2 million[13] to its bankruptcy estate to pay creditor claims.

The Current Shareholders may be disadvantaged by the loss of a certain portion of the MLMIC Proceeds that was distributed to them in March 2020—if the Movant Former Shareholders are successful in obtaining derivative standing and in prosecuting certain causes of action against the Current Shareholders.  Assuming there were no waivers of the MLMIC proceeds by creditors, the Current Shareholders may have to return the portion of the MLMIC Proceeds that they were not entitled to under the Plan.  In addition, the Current Shareholders will have to expend time and resources to defend against the motion and adversary proceeding to be brought by the Movant Former Shareholders in the reopened bankruptcy case.  However, these potential losses or disadvantages are not legal prejudice because (1) it is not prejudice to suffer the loss of property that one is not legally entitled to keep (assuming the Court finds in favor of the Movant Former Shareholders); and (2) it is well-settled that having to defend a lawsuit on the merits is not legal prejudice.  *See Jones*,

---

[13] *See supra*, note 9.

19

2025 WL 432843, at \*4 (citation omitted) (finding that the disadvantage of having to defend a student loan discharge claim on the merits is not the same as legal prejudice); *In re Dicks*, 579 B.R. at 709 (observing that it is "well established that the fact that a defendant will be required to defend a case on the merits does not constitute legal prejudice that weighs against granting the motion to reopen"); *Arana*, 456 B.R. at 177 (finding that the disadvantage of being required to defend against a malpractice action is not the same as legal prejudice).

In addition, the Debtor, Current Shareholders, and Movant Former Shareholders did not object to the Court's retention of jurisdiction provisions in the Plan—which included retention of jurisdiction to "to recover all assets and properties of the Debtor and Reorganized Debtor wherever located, if any" and "to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters, if any." *See* 2d Amended Plan ¶ 12.01 (f) and (j) [Dkt. No. 496]. Thus, none of them can claim legal prejudice if the Court reopens the case, after having decided that the MLMIC Proceeds are property of the estate, to exercise jurisdiction to determine the fate of the MLMIC Proceeds in any subsequent adversary proceeding, litigation, or contested matter. *See Atari*, 2016 WL 1618346, at \*10 (finding that no party will be prejudiced by the court's reopening the debtor's bankruptcy case because none of the parties "objected to the jurisdiction retention provisions of the [p]lan and [c]onfirmation order" and that the parties had submitted themselves to the exclusive jurisdiction of the court with respect to the interpretation and enforcement of the plan and confirmation order).

The Court notes that, even though the Court did not retain exclusive jurisdiction to hear disputes concerning property of the estate, there is currently no nonbankruptcy forum exercising concurrent jurisdiction to hear these matters. Thus, the Movant Former Shareholders, as creditors of the estate, would be prejudiced by the Court's not reopening the Debtor's case because they would be denied access to the forum that has jurisdiction to hear

20

these matters and is best-suited to adjudicate any future litigation given this Court's knowledge of the case and strong interest in interpreting and enforcing its own orders. *See In re Woldeyohannes*, 665 B.R. 543, 575-76 (Bankr. D. Conn. 2024) (observing that bankruptcy courts consider "whether there would be no relief if the case were not reopened" and finding that the bankruptcy court was the "right forum" for the court to enforce and interpret its own orders); *cf. In re Otto*, 311 B.R. 43, 48 (Bankr. E.D. Pa. 2004) (noting that if debtors "had no other forum to assert their discharge injunction, the prejudice they would suffer were relief under section 350(b) denied would outweigh countervailing circumstances").[14]  Moreover, assuming there are no waivers of their claims, the Movant Former Shareholders and other creditors of the estate would be prejudiced by unadministered property of estate not being returned to "the pool of funds from which creditors can be satisfied." *In re Watts*, No. 21-10419 (MG), 2023 WL 5525045, at \*9, \*11 (Bankr. S.D.N.Y. Aug. 25, 2023) (finding that the debtor's creditors would be prejudiced if the court did not reopen the case because they would not be able to benefit from the debtor's undisclosed discrimination claim).

Accordingly, this factor weighs in favor of reopening the Debtor's bankruptcy case.

5.   Extent of the Benefit to the Debtor by Reopening.

"In considering the benefit to the debtor, courts generally consider whether reopening the case serves some beneficial purpose, such as allowing claims to proceed in another forum." *Arana*, 456 B.R. at 173 (citing *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 571 (S.D.N.Y. 2003), *aff'd*, 104 F. App'x 199 (2d Cir. 2004)) (finding that reopening the

---

[14] In *Crayton v. Otto*, the district court for the eastern district of Pennsylvania vacated the bankruptcy court's decision to not reopen the Ottos' bankruptcy case because, *inter alia*, not all of the claims raised in the case could be addressed in another forum. *See Crayton v. Otto*, No. 04-CV-02506, 2005 WL 8153750, at \*3 n. 4 (E.D. Pa. March 31, 2005).

bankruptcy case would allow the trustee to proceed with a malpractice claim, with the debtor possibly recovering a surplus).

Here, reopening the case would allow the Movant Former Shareholders to seek derivative standing to pursue certain causes of action against the Current Shareholders, and if successful, the Debtor would stand to benefit by an addition of over $3.2 million to its bankruptcy estate.[15]  The Movant Former Shareholders have pointed out that NRAD is a nominal entity, which is controlled by the Current Shareholders, who are NRAD's board of directors and corporate officers. *See* Mot. for Entry of J. ¶ 6 [Adv. Dkt. No. 79].  The Movant Former Shareholders have argued that the interests of the Debtor as a corporate entity are adverse to the personal interests of the Current Shareholders with regard to the MLMIC Proceeds. *See* Reply in Further Supp. of Mot. for Entry of J. ¶ 4 [Adv. Dkt. No. 83].  Because it is unlikely that the Debtor will pursue on its own any claims against the Current Shareholders—who are its owners, directors, and officers—reopening the bankruptcy case may allow the claims of the Movant Former Shareholders to proceed and result in a return of the MLMIC Proceeds to the estate.  *Cf. Maeder*, 2025 WL 3298322, at \*3 (quoting *Arana*, 456 B.R. at 173) ("A bankruptcy case should be reopened to administer newly identified property of the estate 'to prevent a windfall' to the debtor."); *In re Dicks*, 579 B.R. at 710 (citation omitted) (finding that if the bankruptcy case is not reopened, defendants in a related lawsuit may receive "a windfall at the creditors' expense" by avoiding a decision on the merits).  Accordingly, this factor weighs in favor of reopening the Debtor's bankruptcy case.

6.   Whether No Relief Would be Forthcoming by Granting the Motion.

"Case law does provide that reopening of a case is a ministerial act that, in and of itself, has no substantive effect." *Roberts v. Vara (In re Roberts)*, 659 B.R. 271, 280 (Bankr.

---

[15] *See supra*, note 9.

22

W.D. Pa. 2024) (citations omitted). "All that reopening of a case provides is an opportunity for a litigant to seek substantive relief in the context of an open bankruptcy case (with all of the protections attendant thereto)." *Id.* (citing *In re Congoleum Corp.*, 636 B.R. 362, 377 (Bankr. D.N.J. 2022)). However, though a "motion to reopen is generally a ministerial act," a bankruptcy court may review the underlying claims, and "it is not an abuse of discretion to deny reopening an action that is completely lacking in merit." *In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010), *aff'd sub nom., Smith v. Silverman (In re Smith)*, 645 F.3d 186 (2d Cir. 2011) (quotation marks and citations omitted); *see also In re Duhaney*, No. 18-45846-ess, 2025 WL 3510992, at *7 (Bankr. E.D.N.Y. Dec. 5, 2025) ("[A] court may decline to reopen a case where the claims to be asserted clearly lack merit."). "A case should not be reopened where doing so would be futile or a waste of judicial resources." *Roberts*, 659 B.R. at 280 (citing *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010)).

Here, the Debtor argues that there would be no relief forthcoming to the Movant Former Shareholders if the Debtor's bankruptcy case is reopened because, *inter alia*, the Movant Former Shareholders have waived their claims or are ineligible to receive the MLMIC Proceeds. *See* Debtor's Mem. of Law in Opp. at 17-25 [Dkt. No. 680]. For example, the Debtor argues that the Movant Former Shareholders waived their claims to the MLMIC Proceeds by executing and delivering a Declaration and Release agreement, whereby they consented to a 13.33% reduction of their maximum distribution under the Debtor's Plan in exchange for an upfront payout of $6,500,250 from NRAD after the close of the NYU Transaction. *Id.* at 17. The Movant Former Shareholders, on the other hand, argue that such releases only barred claims against NYU, not NRAD or the Current Shareholders. *See* Reply Mem. of Law in Further Support to Reopen at 3 [Dkt. No. 684]. The Movant Former Shareholders also argue that the releases in the Plan contain an exception for the parties'

23

"right to enforce the performance of their respective obligations, if any, under the Plan." *Id.* Debtor's counsel, on the other hand, has argued that the releases in the Plan bar the claims of the Movant Former Shareholders. *See* Aug. 22, 2024 Hr'g Tr. 23:8-24:7 [Adv. Dkt. No. 87].

The Court, though not deciding on the question of releases and waiver of claims, does find that there are colorable arguments on both sides, which preclude a finding of futility in reopening the Debtor's case. A determination on the scope of the releases in the Plan and waiver of claims by the Movant Former Shareholders are matters better suited for briefing after the reopening of the Debtor's case because it would involve, among other things, interpretation of language in the Plan and other documents by this Court. In *Atari*, the parties agreed to defer consideration of the merits of the issue of whether certain releases in the plan and confirmation order barred one party's claims against another until after the court resolved the threshold question of whether to reopen the bankruptcy cases. *See Atari*, 2016 WL 1618346, at \*12. However, the *Atari* court noted that "even if the parties had not agreed to defer consideration of the merits, the [c]ourt would find that it is not clear at the outset that no relief will be forthcoming if the case is reopened." *Id.* Because one party had "made at least a colorable claim that an antisuit injunction should issue in order to protect the releases contained in the [p]lan and [c]onfirmation [o]rder . . . it [was] not clear at the outset that no relief will be forthcoming if these cases are reopened." *Id.* at \*13. Similarly here, because the Movant Former Shareholders have made at least a colorable claim that they have not waived their claims to the MLMIC Proceeds, the Court finds that it would not be futile to reopen the Debtor's bankruptcy case. Accordingly, this factor weighs in favor of reopening the Debtor's bankruptcy case.

7.    Benefit to Creditors.

"Absent countervailing considerations, the court should grant a motion to reopen the case if doing so is needed to administer estate assets or if there is a reasonable prospect that creditors would benefit from a reopening of the case." *Yakubova*, 2026 WL 1246576, at \*11 (citing *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 224 (3d Cir. 2005)).    In certain circumstances, such as when administering an undisclosed asset, the interests of creditors weigh more heavily in the Court's analysis. *See Watts*, 2023 WL 5525045, at \*11 (citation omitted) ("The Court's focus in the context of reopening a case to administer new assets 'is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate' and 'debtor's good faith is irrelevant'"); *Arana*, 456 B.R. at 175 ("The prospect of a benefit to creditors is the most important consideration in determining whether to reopen a bankruptcy case to add an undisclosed asset."); *In re Corkran*, No. 13-30909, 2019 WL 965102, at \*2 (Bankr. N.D.N.Y. Feb. 25, 2019) (citations omitted) (noting that in determining whether cause exists to reopen a bankruptcy case, "the primary factor for consideration is the potential benefit to creditors of the estate").

Here, there is a clear potential benefit to creditors of the Debtor's estate if the bankruptcy case is reopened.  If the Movant Former Shareholders prevail on their causes of action after the Debtor's case is reopened, the MLMIC Proceeds, a substantial sum, may be returned to the Debtor's estate to be re-distributed to creditors in accordance with the Plan. *See Arana*, 456 B.R. at 176 (finding that "creditors stand to reap a substantial benefit if the trustee prevails in the [m]alpractice [a]ction" and that the case should be reopened so that the trustee could "determine how to proceed, based on an investigation of the asset and the claims that are filed").  Accordingly, this equitable concern weighs in favor of reopening the Debtor's bankruptcy case.

25

## CONCLUSION

For the foregoing reasons, the second motion to reopen the Debtor's bankruptcy case is granted.

**SO ORDERED.**



Dated: May 29, 2026
    Central Islip, New York

Louis A. Scarcella
United States Bankruptcy Judge